# Franklin Trust Co. v. Philadelphia, Baltimore & Washington Railroad Company, Appellant.

*Negligence—Railroads—Bills of lading—Evidence—Province of court and jury.*

In an action against a railroad company to recover damages for alleged negligence in issuing, through its agent, shipping receipts or bills of lading for goods which were not actually delivered by the shipper to the railroad, binding instructions for defendant must be given, where the uncontradicted evidence shows that the bills of lading as made out, signed by the agent of the railroad and delivered to the shipper, did not include any goods which were not received by the railroad company, and that the bills of lading had been fraudulently altered by the shipper after he received them.

Argued May 1, 1912. Appeal, No. 65, Jan. T., 1912, by defendant from judgment of C. P. No. 2, Phila. Co., March T., 1906, No. 3328, on verdict for plaintiff in case of Franklin Trust Company v. Philadelphia, Baltimore & Washington Railroad Company. Before BROWN, MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Reversed.

Trespass to recover damages for alleged negligence in issuing bills of lading. Before BARRATT, J.

The facts are stated in the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $12,837.75. Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

*E. J. Sellers,* of *Sellers & Rhoads,* for appellant.

*Alex. Simpson, Jr.,* with him *Alfred Aarons,* and *Henry N. Wessel,* for appellee.

OPINION BY MR. JUSTICE POTTER, October 14, 1912:

The defendant in this case was charged with negligence in issuing, through its agent, shipping receipts or bills of lading for goods which were not actually delivered by the shipper to the railroad. Relying upon these bills of lading, plaintiff claims it advanced money to the shipper, with resulting loss and damage to itself. The trial judge in charging the jury said, "As I have already instructed you, there is but the merest scintilla of evidence here that there might have been negligence upon the part of the employees of the defendant railroad company. I leave it to you, although I confess I have very serious doubts about it." We are not able to find in the evidence even a spark of proof tending to show negligence upon the part of the defendant, with respect to the matter in question. The fact to be determined is the condition, as shown by the evidence, of the various bills of lading, at the time when the signature of the agent of the defendant was affixed thereto. Did they or did they not at that time call for more goods than had actually been delivered to the railroad company? The plaintiff sought to establish the fact in this respect by calling as a witness in its behalf Mr. War-

nock, who took up the various bills of lading one by one, and stated just what was and what was not included in them, when they were signed, and what goods were actually delivered at that time to the company for shipment. Thus on shipping receipt No. 10 on the list, he testified that as agent for the company, when he signed the bill of lading, and the duplicate memorandum copy, it was for five rolls of carpet, and these were actually received. As presented by the plaintiff this receipt called for twenty-five rolls, twenty of which were not received by the company, and were added to the receipt, as Mr. Warnock testified, after he signed the bill of lading and delivered it to the shipper. Shipping receipt listed as No. 15, in like manner, as he testified, was for five rolls of carpet when he signed it, and that number were delivered to the railroad when the bill of lading was given to the shipper. Five rolls were afterwards inserted in this bill of lading, and the duplicate memorandum copy of it. The next, No. 49, was for five rolls as originally made out and signed, and twenty rolls were afterwards added. And so on through the entire list as made up in plaintiff's Exhibit "A" embracing the whole of plaintiff's claim in this case. With respect to them all, Mr. Warnock testified that as originally signed by the agent of the company, the bills of lading covered only goods which were actually delivered to the company. He said that the items for which it is here sought to hold the defendant responsible were added to the bills of lading, and to the copies, after they passed from the hands of the agent to the shipper. It was further explained that three papers were generally made out at once, by means of carbon copies, for each shipment. These were a shipping order, the bill of lading, and a duplicate memorandum copy of it. The shipping order was signed by the shipper, the other two papers by the agent of the company. In nearly every shipment here involved, Mr. Warnock produced the shipping order, in corroboration of his statement as to what the

bill of lading originally contained, at the time he signed it. This testimony of Mr. Warnock was not contradicted or varied in any way by any other evidence offered by the plaintiff. In fact it produced no other witness who had any personal knowledge of what was contained in the bills of lading when they were signed, or as to what goods were delivered by the shipper to the railroad at that time. The other witnesses were officers and employees of the plaintiff, who never saw the bills of lading until they were brought in by the shipper. The only witness called on behalf of the defendant, fully corroborated the testimony of Mr. Warnock who was called by the plaintiff. The evidence was thus undisputed that the bills of lading as made out, signed by the agent of the railroad, and delivered to the shipper, did not include any goods which were not received by the railroad. That being so, there was nothing upon which to base the charge of negligence in this respect, against the defendant. As negligence is a fact which must be proven and as the burden of such proof is upon the party who asserts it, in this instance the plaintiff, it is clear that the latter failed to make out a case, and the defendant was entitled to binding instructions in its favor. If, as the evidence shows, the agent did not sign the bills of lading for more goods than at the time were actually delivered to the railroad, that is an end to the charge of negligence. No matter whether it was the shipper or some one else who added to the bills of lading descriptions of more goods than were included when the bill of lading was made out, that was not a matter for which the defendant was responsible. In the face of the clear evidence of plaintiff's own witness, that the bill of lading as originally signed did not call for more goods than were delivered, it was for plaintiff to offer some other evidence to the contrary. In the absence of such additional evidence, there was no disputed question of fact for the jury to pass upon. It appears from the record in this appeal, as it did when the case was

here before, that the shipper perpetrated gross frauds upon the plaintiff in connection with this same series of shipments, and that it began a prosecution against him for forgery, which apparently ended when the shipper committed suicide. Many of the bills of lading were so palpably forgeries that all claim under them was abandoned by plaintiff. Those upon which the claims in this case were finally based, do not seem to have contained alterations quite so palpable upon the face of the bills, but under the clear testimony of the chief witness on behalf of plaintiff, the fact of alterations made after the delivery of the shipping receipts to the shipper, was made to appear very clearly.

It might be pertinent to add that the transactions in this case were not the usual ones in which the bill of lading is used as the symbol of the property shipped, and retained for the purpose of controlling the title to the goods. The plaintiff here purchased from a shipper certain book accounts, and regarded the bills of lading merely as evidence of the fact that the goods which were supposed to be the basis of the accounts, had actually been shipped. The bills of lading were not retained, but were sent to the supposed purchasers, and it was upon the financial standing and credit of the purchaser that the plaintiff relied, and not upon any title secured through the bill of lading. The latter was regarded simply as evidence that a shipment had been made. And for alleged carelessness in putting out misleading statements in the bills of lading the effort to recover was made in this case.

The charge of negligence having failed for want of any proof, it becomes unnecessary to consider the very interesting legal question, raised in the argument of the learned and able counsel for appellee, as to the proper rule of law which should be followed, in cases where bills of lading have inadvertently or fraudulently been issued for goods which have not actually been received. That question is not now before us.

The second and third assignments of error are sustained. The judgment of the court below is reversed, and judgment is here entered for the defendant.